**Thomas J. DAVIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–02–623–CR.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

June 24, 2004.

Rehearing Overruled Dec. 9, 2004.

Jill S. Williams, Kingsville, for appellant.

Carlos Valdez, Nueces County Dist. Atty., Corpus Christi, for state.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

Thomas J. Davis appeals his conviction for indecency with a child.[1] We reverse and remand for entry of an order dismissing the charges against him.

## I. BACKGROUND

The State of Texas charged Davis by an indictment alleging that on or about May 25, 1996, he committed the offense of indecency with a child by exposure. Following Davis's guilty plea on August 31, 1999, the trial court deferred adjudication, imposed court costs of $511.25, and placed Davis on community supervision for a term of two years. On October 17, 2002, on Davis's pleas of true to violations alleged in the

State's motion to revoke, the trial court adjudicated Davis's guilt, revoked his community supervision, and sentenced him to ten years confinement in the Institutional Division of the Texas Department of Criminal Justice. Davis filed a timely pro se notice of appeal, generally asserting his desire to appeal.

Davis's timely notice of appeal invoked our jurisdiction. *See Bayless v. State*, 91 S.W.3d 801, 805–06 (Tex.Crim.App.2002). The rules of appellate procedure governing how appeals proceed in criminal cases were amended effective January 1, 2003. This Court applies those amended rules of appellate procedure to all cases on appeal on the effective date of the amendments. *See, e.g., Escochea v. State*, 139 S.W.3d 67, 70 (Tex.App.-Corpus Christi 2004, no pet. h.). Accordingly, we abated the appeal on July 21, 2003 and ordered a supplemental record to include, in compliance with rule 25.2(a)(2), the trial court's certification of Davis's right to appeal (a "CORTA"). *See* Tex.R.App. P. 25.2(a)(2). On August 14, 2003, the trial court filed a request that we reconsider our application of the amended rules to pending appeals or, alternatively, for additional time to prepare the CORTAs in this case and others. On August 20, 2003, we denied the trial court's request to reconsider our application of the amended rules but granted its request for additional time to prepare the CORTAs. We extended the time for filing the CORTAs an additional thirty days. The trial court moved for en banc reconsideration. On September 18, 2003, this Court, sitting en banc, withdrew the opinion of August 20, abated the cases subject to the order, and granted the trial court an additional thirty days, or until October 18, 2003, to prepare

---

1. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 21.11, 1993 Tex. Gen. Laws 3586, 3616 (effective Sept. 1, 1994), *amended by* Act of May 23, 2001, 77th Leg., R.S., ch.

739, 2001 Tex. Gen. Laws 1463, 1464 (current version at Tex. Pen.Code Ann. § 21.11(a)(2)(A), (d) (Vernon 2003)).

and file the CORTAs. On October 30, 2003, the trial court submitted a CORTA in this case stating that it is not a plea-bargain case, and Davis has the right of appeal. We reinstated the appeal. The trial court clerk supplemented the record with the CORTA on February 9, 2004.

Meanwhile, on March 25, 2003, court-appointed appellate counsel for Davis filed a brief in which she concluded that this appeal is frivolous. *See Anders v. California*, 386 U.S. 738, 744–45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel's brief did not recite that she notified Davis of his right to review the appellate record to determine what issues to raise in a prospective pro se brief. *See Johnson v. State*, 885 S.W.2d 641, 646–47 (Tex.App.-Waco 1994, pet. ref'd) (per curiam). Davis filed a pro se motion informing us that the record had not been made available to him. He requested an extension of time to complete his pro se brief. Therefore, on January 5, 2004, we abated this appeal again and, in the interest of justice, ordered counsel to provide the record to Davis. *See McMahon v. State*, 529 S.W.2d 771, 772 (Tex.Crim.App.1975) (abating appeal and ordering *Anders* counsel to inform appellant of right to review record and file pro se brief). We granted Davis's motion for extension of time and ordered him to file his pro se brief within forty-five days of the date of the order. We received a letter from counsel indicating compliance with our order. We again reinstated this appeal.

Davis timely filed a pro se brief, which we received on February 23, 2004. He questions why he was not discharged from supervision on August 31, 2001, two years after the plea proceeding in which the trial court imposed two years deferred adjudication community supervision. On receipt of Davis's pro se brief, we reviewed the record. The record reflects that Davis's plea proceeding was conducted August 31, 1999. The trial court imposed the two years deferred adjudication community supervision on that date, which was reflected in a judgment signed September 9, 1999. The State's motion to revoke, filed September 19, 2002, recited that the trial court first extended the term of Davis's community supervision to three years on May 24, 2001. However, no order of that date appeared in the record. The clerk's record did not reflect any extension order or motion to modify or revoke filed within the original two-year period. The docket sheet contained no entry between August 31, 1999 and September 10, 2002. The first order extending the term of Davis's community supervision reflected in the clerk's record was signed February 13, 2002, more than two years after August 31, 1999. We concluded that Davis raised in his pro se brief an arguable issue unrelated to his conviction that we have the power to review in this appeal. *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon Supp.2004); *see also Kirtley v. State*, 56 S.W.3d 48, 51–52 (Tex.Crim.App.2001) (citing *Vidaurri v. State*, 49 S.W.3d 880, 884 (Tex.Crim.App.2001)); *May v. State*, 106 S.W.3d 375, 376 n. 4 (Tex.App.-Corpus Christi 2003, no pet.) (applying *Vidaurri* to appeal commenced after January 1, 2003 to hold requirements of current rule 25.2(a)(2) inapplicable to claim of error in misapplication of mandatory sentencing statute).

Having disagreed with *Anders* counsel's evaluation of Davis's appeal, we granted counsel's motion to withdraw, as counsel cannot be required to brief and argue a cause she has determined to be frivolous. *See Johnson*, 885 S.W.2d at 648 (citing *Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim.App.1991)). However, Davis retained the right to appointed appellate counsel. *See Johnson*, 885 S.W.2d at 648. To protect that right, on February 24,

2004, we abated this appeal for the third time and remanded the cause to the trial court for appointment of a different attorney to represent Davis on appeal. We ordered the trial court to hold a hearing to determine if the record on appeal is correct. We directed the trial court to issue findings of fact and conclusions of law regarding the accuracy of the record. We requested supplementation of the record within thirty days of the date of the order to include the court reporter's record of the hearing, the trial court's findings and conclusions, and any additional documents omitted from the original record on appeal. *See* TEX.R.APP. P. 34.5(c)(1), 34.5(c)(2). We also ordered new appellate counsel to file a brief addressing the issue raised by Davis's pro se brief.

The trial court appointed new appellate counsel on March 24, 2004. It held a hearing on the accuracy of the record on April 30, 2004. On May 4, 2004, the trial court supplemented the record with a court reporter's record of the hearing and the trial court's findings of fact and conclusions of law regarding the accuracy of the record. We again reinstated this appeal.

Now included within the supplemental record is a court reporter's record of a "supervision review" conducted May 24, 2001, in which the trial court extended Davis's community supervision for an additional year. The trial court did not locate a copy of a written order of this initial extension. However, while no docket entry reflects the proceeding conducted May 24, 2001, the trial court's bench log reflects the proceeding and the trial court's modification of Davis's conditions of release by extending the term of community supervision for one year. On May 25, 2004, new appellate counsel complied with our order by filing a brief on Davis's behalf that analyzes the supplemented record and evaluates the trial court's authority to extend and revoke Davis's community supervision.

## II. FACTS

On May 18, 2001, the trial court conducted sua sponte "supervision reviews" of sex offenders subject to community supervision in that court. *In re Lee,* 2002 WL 335212, 2002 Tex.App. LEXIS 1523 (Tex. App.-Corpus Christi 2002, orig. proceeding), *rev'd, Banales v. Court of Appeals for the Thirteenth Judicial Dist.,* 93 S.W.3d 33 (Tex.Crim.App.2002) (orig.proceeding), *withdrawn,* 76 S.W.3d 811 (Tex.App.-Corpus Christi 2002, orig. proceeding) (per curiam). The supplemental record of Davis's May 24, 2001 "supervision review" began as follows:

> THE COURT: Mr. Davis, you were among those set for a supervision review last Friday, and when I called your case you had asked to have the hearing recessed so that you could get a lawyer. Did you get a lawyer?
>
> DAVIS: I consulted a lawyer.
>
> THE COURT: All right. Is that lawyer going to be here?
>
> DAVIS: No, Your Honor.
>
> THE COURT: All right. Can we proceed then without your having a lawyer present?
>
> DAVIS: Yes, Your Honor.

A community supervision officer told the court:

> He's on a two-year probation, Your Honor, for indecency by exposure. He's compliant with his HIV testing and DNA testing. He currently is attending treatment with Dr. Voris, and Dr. Voris is present in the courtroom, Your Honor, and he's current with his sex offender registration. Mr. Davis tested deceptive on two of his polygraphs and truthful on two of the other polygraphs,

Your Honor. His UAs have been negative and he has completed his community service. Dr. Voris recommends that the Defendant continue on probation and be extended for another year.... [W]e're recommending that he be extended another year in order to make some progress in therapy because Dr. Voris doesn't feel he has made enough progress and to resolve the issues of his polygraphs. The Department also recommends that he be extended and that letters be sent out to his neighbors.

The trial court then asked Dr. Voris if the therapist wished to add anything. Dr. Voris told the court:

No, except Mr. Davis is one of those individuals who has been in compliance and has followed the letter of the law and the letter of the—but without gaining the necessary insight as to what is going on, and he's only now at that point where he's starting to begin to understand the dynamics and the [etiology] of his offense, so I was asking for at least a three-month or longer extension.

Davis then asked the court to limit any extension to three months. The trial court refused:

I'm going to accept the Department's recommendation and modify the conditions of your supervision by extending the supervision period to August 31, 2002. I find that it would be in the best interests of the community as well as your own that you continue the extended treatment with the treatment providers that you have right now. I don't think an additional three months, considering how things have gone the last couple of years with you, that three months is going to do it. I believe that at the very least, you need that additional year's

treatment to make a better recovery and for you to be better rehabilitated.

Dr. Voris asked for clarification:

DR. VORIS And Your Honor, just a question for my own clarification, we're going to be dealing with several other cases similar to this. Is—if an individual does meet, you know, the therapeutic treatment goals, are they eligible to come back and petition for release, or do we just say a year is a year? I just need to kind of have a sense of—

THE COURT: I think what we need to say is a year is a year.

Davis's community supervision continued without further activity in the trial court until February 13, 2002, when the State filed a motion to modify. It requested a two-year extension (to August 31, 2004) and an additional condition of release that Davis "participate in Substance Abuse Chemical Therapy (Flagyl/Antabuse) under a physician's care at [his] expense until medically discharged." The trial court ordered the requested modifications that same day.

The terms and conditions of Davis's community supervision, as modified, required that he: (1) not use alcoholic beverages, narcotics, or any other controlled substances and submit to urinalysis as directed (condition (H)); (2) pay $511.25 court costs at the rate of $25.00 per month, monthly supervision fees, and a sex offender's fee (condition (J)); (3) submit to, participate in, pay for, and satisfactorily complete the Sexual Perpetrator's Treatment Program (SPTP) (condition (N)); (4) participate in Substance Abuse Chemical Therapy (Flagyl/Antabuse) under a physician's care at his expense until medically discharged (modified condition (N–12)); and (5) attend, participate, pay for, and complete in a satisfactory manner screen-

ing/evaluation and inpatient counseling for substance abuse at Charlie's Place beginning 09–16–02 (modified condition 10–1c).

On September 19, 2002, the State filed a motion to revoke. It alleged that Davis violated the terms and conditions of his community supervision by: (1) being found in possession of beer in his refrigerator on a random field visit, admitting to his probation officer and a counselor that he had consumed alcohol, and smelling of alcohol on one occasion when he reported to his probation officer; (2) being $256.25 in arrears in paying his $511.25 in court costs, $480.00 in arrears in paying his $40.00 monthly supervision fee, and $30.00 in arrears in paying his $120.00 sex offender's fee at the rate of $5.00 per month; (3) failing to attend the Sexual Perpetrator's Treatment Program; (4) failing to participate in Substance Abuse Chemical Therapy by twice failing to comply with his probation officer's referral for Antabuse and by his physician's discontinuance of Antabuse due to Davis's consumption of alcohol as indicated by blood work; and (5) failing to report back to Charlie's Place as ordered by a counselor.

Davis pleaded true to violating conditions (H), (J), and (N), including the modified condition of 09–10–02. The trial court accepted Davis's pleas of true. The State offered the testimony of a probation officer, who testified to Davis's violations of the conditions as alleged in the motion to revoke. Davis testified in his own defense and admitted to consuming alcohol and not attending sex offender counseling as instructed by his probation officer. After hearing the evidence, the trial court revoked Davis's community supervision and adjudicated him guilty. Neither side presented any additional evidence on punishment. The trial court sentenced Davis to ten years confinement in the Institutional Division of the Texas Department of Criminal Justice.

### III. SCOPE OF ANDERS REVIEW

 This Court, on receipt of a "frivolous appeal" brief, must perform an independent review of the record to determine any grounds for appeal. *Escochea,* 139 S.W.3d at 70–71 (citing *Penson v. Ohio,* 488 U.S. 75, 80, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988)). No appeal lies from the trial court's decision to adjudicate Davis's guilt. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12 § 5(b) (Vernon Supp.2003); *see also Connolly v. State,* 983 S.W.2d 738, 741 (Tex. Crim.App.1999). We have no power to review any challenge to the sufficiency of the notice contained in the terms and conditions of the community supervision imposed by the trial court, adequacy of the State's motion to revoke, or sufficiency of the evidence to support the trial court's adjudication decision. *See Connolly,* 983 S.W.2d at 741. However, once the trial court adjudicates the guilt of a defendant on deferred adjudication community supervision, the assessment of punishment, pronouncement of sentence, and the defendant's appeal continue as if the adjudication of guilt had not been deferred. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (Vernon Supp.2004).

 Thus, Davis's appeal may require exercise of our review power over errors unrelated to his conviction. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (Vernon Supp.2004); *see also Kirtley,* 56 S.W.3d at 51–52 (citing *Vidaurri,* 49 S.W.3d at 883). However, we first must independently review the record for the validity of any written waiver of the right to appeal. *See Escochea,* 139 S.W.3d at 82. If our independent review of the record reveals that Davis executed a valid waiver of the right to appeal the adjudication of his guilt and the revocation of his community supervi-

sion, the scope of our duty at this time under *Anders* and *Penson* to review the record independently requires us to examine the record for: (1) jurisdictional defects; and (2) the legality of the sentence imposed as authorized by law. *Id.* 139 S.W.3d at 83. In the absence of a valid written waiver of Davis's right to appeal from his adjudication and revocation, we satisfy our duties under *Anders* and *Penson* at this time by independently reviewing the record for errors unrelated to the conviction, including: (1) jurisdictional defects; (2) matters raised by written motion ruled on before trial; (3) matters the trial court granted permission to appeal; and (4) the legality of the sentence imposed as authorized by law. *See Chavez v. State,* 139 S.W.3d 43, 56 (Tex.App.-Corpus Christi 2004, no pet. h.) (and cited cases). Further, at this time we must determine in our independent review if the record in this *Anders* case supports exercise of our limited review power. *See Escochea,* 139 S.W.3d at 82; *see also Chavez,* 139 S.W.3d at 58. With our duties under *Anders* and *Penson* firmly in mind, we turn to our disposition of this appeal.

## IV. DISPOSITION

### A. Anders Brief

Davis's newly appointed appellate counsel also has concluded that this appeal is frivolous. *See Anders,* 386 U.S. at 744–45, 87 S.Ct. 1396. Counsel observes that the State's motion to revoke was filed before Davis's extended period of community supervision expired. Counsel concludes there are no issues to warrant an appeal of Davis's adjudication, revocation, or sentence. Counsel agrees with the trial court's findings of fact and conclusions of law regarding the initial one-year extension of Davis's term of community supervision, reasoning that the trial court was authorized to extend the term. Therefore,

counsel adds, the subsequent revocation is not a nullity.

▮▮▮ An *Anders* brief must provide references to both legal precedent and pages in the record to demonstrate why there are no arguable grounds to be advanced. *High v. State,* 573 S.W.2d 807, 812 (Tex.Crim.App. [Panel Op.] 1978). With relevant citation to the record, counsel professionally evaluates the extension and revocation proceedings. *See Currie v. State,* 516 S.W.2d 684, 684 (Tex.Crim.App. 1974). We do not interpret *Anders* as requiring appointed counsel to make arguments counsel would not consider worthy of inclusion in a brief for a paying client or to urge reversal if, in fact, counsel finds no arguable issue to appeal. *See id.* We hold that counsel's brief is not the "conclusory statement" decried by *Anders.* *See id.*

### B. Independent Review of the Record

#### 1. Validity of Written Waiver of the Right to Appeal

▮▮ Our independent review of the record reveals that the clerk's record of the written plea papers signed by Davis contains three references to Davis's right of appeal:

*Right of Appeal.* Generally speaking, you have a right to appeal the judgment of the Court. If you are dissatisfied with the judgment of the Court, and you want to appeal, you must give notice of appeal within 30 days from this date, unless you file a motion for new trial, in which event you must give notice of appeal within 90 days from this date. Notice of appeal must be in writing filed with the clerk of this Court. If you are indigent and unable to hire an attorney, the Court will appoint an attorney to represent you on appeal free of charge, and will also furnish you free of charge a record of the hearing. It is your re-

sponsibility to follow all appellate timetables provided by the Texas Code [of] Criminal Procedure and the Texas Rules of Appellate Procedure.

Court's Written Admonishments to Defendant in Revocation and/or Adjudication Proceedings, p. 2. The same document contains another acknowledgment of Davis's appellate rights:

> I understand that, if I am dissatisfied with the judgment of the Court, I have the right to appeal. I understand that, if I entered a plea of true to any violation of the conditions of supervision, my right of appeal may be affected in that I will have virtually nothing to appeal and the judgment of the Court will probably be affirmed. I also understand that if I am indigent and unable to hire a lawyer, the Court will appoint a lawyer to represent me on appeal free of charge, and will also furnish me free of charge a record of the revocation hearing only. I understand that it is my responsibility to follow all requirements for appeal and all appellate timetables as set by the Texas Code of Criminal Procedure and the Texas Rules of Appellate Procedure.

Court's Written Admonishments to Defendant in Revocation and/or Adjudication Proceedings, p. 4 (Defendant's Statement Understanding Admonishments). The same document contains a waiver of Davis's appellate rights:

> **Waiver of Appeal.** I understand that, whether I plead true or nolo contendere, I may have a limited right to appeal. I hereby waive any right of appeal that I may have to the judgment of the Court.

Court's Written Admonishments to Defendant in Revocation and/or Adjudication Proceedings, p. 5 (Defendant's Waiver of Rights).

■ "A valid waiver of appeal, whether negotiated or non-negotiated, will prevent a defendant from appealing without the consent of the trial court." *Perez v. State*, 129 S.W.3d 282, 287 (Tex.App.-Corpus Christi 2004, no pet. h.) (discussing validity of written waiver of right to appeal) (quoting *Monreal*, 99 S.W.3d at 622). However, the trial court has certified that Davis has the right of appeal. The trial court's CORTA is consistent with a determination that the "boiler-plate" language in Davis's plea papers is not a valid waiver of his right to appeal. *See Alzarka v. State*, 90 S.W.3d 321, 324 (Tex.Crim.App. 2002) (finding that record directly contradicted and rebutted any presumption raised by terms of boiler-plate waiver of right to appeal contained in plea papers). "The trial court is in a better position to determine whether the previously executed waiver of appeal was in fact validly executed and if there is any arguable merit in appellant's desire to appeal." *Iles v. State*, 127 S.W.3d 347, 350 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (quoting *Willis v. State*, 121 S.W.3d 400, 403 (Tex. Crim.App.2003)). We hold that Davis's written waiver of his right to appeal is invalid. *See Perez*, 129 S.W.3d at 287 (holding waiver of appeal signed before sentencing without benefit of punishment recommendation was invalid).

We note that the record does not support exercise of our power to review issues the trial court granted Davis permission to appeal. The record does support exercise of our review power over errors unrelated to Davis's conviction, including prerevocation rulings on motions, jurisdictional defects, and the legality of Davis's sentence as unauthorized by law. *See Chavez*, 139 S.W.3d at 58.

### 2. Errors Unrelated to Conviction

■ We note that the record shows that the trial court followed the State's punishment recommendation when it originally placed Davis on deferred adjudication.

*See* Tex.R.App. P. 25.2(a)(2). When a prosecutor recommends deferred adjudication in exchange for a defendant's plea of guilty or nolo contendere, the trial court does not exceed that recommendation if, on proceeding to an adjudication of guilt, the court later assesses any punishment within the range allowed by law. *See Chavez*, 139 S.W.3d at 54 (and cited cases). Further, Davis was required to raise any complaints involving the original plea proceeding through an appeal taken at that time. *See id.* Davis did not appeal at that time, and any challenge to the original plea proceeding in this appeal would be untimely. *See id.*

Our independent review of the record reveals that Davis filed two motions before the adjudication and revocation proceeding. Both are unrelated to his conviction: (1) a request for furlough from custody to attend his mother's funeral; and (2) a motion seeking appointment of new trial counsel.

### a. Prerevocation Motions

#### (1) Waiver

■■■ We note that the record of the revocation proceeding reflects that Davis waived any ruling on his prerevocation motions: "In the event that my lawyer filed pretrial motions on my behalf, I hereby withdraw all such motions, regardless of whether rulings were made on the motions. If the Court ruled on any pretrial motions filed on my behalf, I hereby waive any such rulings by the Court and further waive my right to appeal any such rulings to an appellate court." However, Davis's waiver of his prerevocation motions was printed immediately above the waiver of his right to appeal, which we have held to be invalid. Similarly, we hold Davis's waiver of the right to appeal his prerevocation motions equally invalid. *See Alzarka*, 90 S.W.3d at 324.

### (2) Request for Furlough

The trial court signed an order granting Davis's request to attend his mother's funeral but imposed conditions, including that Davis be accompanied by law enforcement officers and that he sign an agreement acknowledging the conditions of his release. A second order recites that Davis declined to sign the agreement because he refused to be accompanied by law enforcement officers. Thus, the record reveals that the trial court granted one of the motions Davis filed before the revocation proceedings, but Davis did not fulfill its conditions. Thus, this record presents no issue for our review regarding Davis's prerevocation request for furlough.

### (3) Request for Appointment of New Trial Counsel

■■■ In a letter to the trial court dated the day before the trial court held his revocation proceeding, Davis complained that: "It is my belief that [trial counsel] is *not* working to the best of his ability to help me in my case. It is also my belief that if I am not appointed a new counsel by the court I would not have a fair trial." We note that the plea papers in the clerk's record reflect that Davis was represented at the revocation proceeding by the lawyer he sought to dismiss. No express ruling or order on Davis's request appears in the record. We assume without deciding that counsel's continued appearance as Davis's lawyer reflects the trial court's implicit denial of Davis's request. *See* Tex.R.App. P. 33.1.

■■■ In the absence of adequate cause for the appointment of new counsel or an effective waiver of the right to counsel to pursue self-representation, an accused does not have the right to appointed counsel of choice but must accept counsel as-

signed by the court. *Privett v. State*, 635 S.W.2d 746, 749 (Tex.App.-Houston [1st Dist.] 1982, pet. ref'd). Davis's expressed dissatisfaction with his trial counsel does not rise to the level of adequate cause for appointment of new counsel. *See Aguilar v. State*, 651 S.W.2d 822, 823–24 (Tex.App.-Houston [1st Dist.] 1983, no pet.) ("Appellant's stated purpose in having the court appoint counsel who would follow appellant's defense strategy, regardless of counsel's own views, does not constitute an 'adequate' reason for the appointment of new counsel."). In any event, our independent review of the court reporter's record of the revocation proceeding reveals the following colloquy between Davis and the trial court:

> THE COURT: And are you satisfied with the way that your lawyer has represented you?

> DAVIS: Yes, sir.

Further, in "Defendant's Statement Understanding Admonishments," Davis attested that "I am satisfied with the representation my lawyer has given me, and I have no complaints or objections to such representation." Accordingly, we hold that Davis waived at trial any objection to his appointed trial counsel. As with Davis's request for a furlough, the record presents nothing for review regarding his motion for appointment of new trial counsel.[2] We turn to the issue Davis raises in his pro se brief.

### b. Davis's Pro Se Issue

We emphasize that this record, even as supplemented after our remand for a determination of the accuracy of the record, does not include any extension order within Davis's initial two-year term of community supervision. Specifically, the record does not include an order extending Davis's term of community supervision for another year on May 24, 2001. No docket entry reflects court filings or proceedings of any kind during Davis's initial two-year supervisory term. The court reporter's record of the "supervision review" conducted by the trial court on May 24, 2001 is the only record of the one-year extension, and it was not included in the original record on appeal.

▆▆▆ We note that section 22(c) of article 42.12 authorizes a trial court to extend a period of supervision within one year after the term expires if the State has filed a motion to revoke within the term. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 22(c) (Vernon Supp.2004).[3] Here, our independent review of the record reveals that the State had not filed any motion to revoke, continue, or modify Davis's community supervision before the trial court's sua sponte "supervision review" held May 24, 2001. The State filed its first and only motion to revoke on September 19, 2002, more than a year after Davis's initial two-year supervision expired on August 31, 2001. A trial court's unauthorized extension of the length of a defendant's community supervision renders any subsequent

---

**2.** We note we have no power to review any arguable ineffective-assistance-of-counsel claims. *See Escochea v. State*, 139 S.W.3d at 83–84 (Tex.App.-Corpus Christi 2004, no pet. h.) (citing *Woods v. State*, 108 S.W.3d 314, 316 (Tex.Crim.App.2003)) (interpreting former rule of appellate procedure 25.2(b)(3)).

**3.** A section of article 42.12 not in effect at the time of Davis's offense provides for the extension of community supervision of certain sex offenders. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 22A (Vernon Supp.2004). Other provisions of article 42.12 not relevant to our analysis also have been amended since the date of Davis's offense. We prefer simplicity and cite to the current version of the statute if the provision has not changed.

revocation outside the original period of supervision "a nullity." *See Ex parte Fulce,* 993 S.W.2d 660, 662 (Tex.Crim.App. 1999) (orig.proceeding) ("A court has no authority to act outside the periods permitted by statute."); *see also Ex parte Donaldson,* 86 S.W.3d 231, 233 (Tex.Crim.App. 2002) (orig.proceeding) (per curiam) (granting habeas corpus relief where applicant's probationary period expired without pending motion to revoke). We hold that Davis's pro se brief, which correctly asserts that the trial court revoked his community supervision after his initial two-year term of supervision had expired, raises an arguable error unrelated to his conviction. Further, we hold that the record supports exercise of our review power over the issue Davis raises as unrelated to his conviction. *See Chavez,* 139 S.W.3d at 58.[4]

### C. Analysis of Validity of Initial One–Year Extension

#### 1. The Trial Court's Authority under Section 22(c) of Article 42.12

■ Section 22(c) of article 42.12 of the code of criminal procedure has been interpreted to permit a trial court to extend a probationer's period of community supervision with or without a revocation motion and with or without a hearing. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 22(c) (Vernon Supp.2004)[5]; *see also Calderon v. State,* 75 S.W.3d 555, 561 (Tex. App.-San Antonio 2002, pet. ref'd) (op. on reh'g) (per curiam); *Warmoth v. State,* 946 S.W.2d 526, 527 (Tex.App.-Fort Worth 1997, no pet.); *Ex parte Harrington,* 883 S.W.2d 396, 400 (Tex.App.-Fort Worth 1994, pet. ref'd).[6] We analogize to article 28.01 of the code of criminal procedure, which permits but does not require a trial court to conduct pretrial proceedings. *See* TEX.CODE CRIM. PROC. ANN. art. 28.01 (Vernon 1989). Article 28.01 is not a mandatory statute but one directed to the trial court's discretion. *State v. Reed,* 888 S.W.2d 117, 119 (Tex.App.-San Antonio 1994, no pet.). Nonetheless, once the trial court convenes a pretrial proceeding, article 28.01 expressly requires that the defendant be present. *See* TEX.CODE CRIM. PROC. ANN. art. 28.01, § 1 (Vernon 1989). The right to counsel, not expressly mentioned

---

4. Since Davis's complaint triggers exercise of our power to review issues unrelated to Davis's conviction, we do not address whether Davis's challenge also triggers exercise of our power to review jurisdictional defects or unauthorized, illegal sentences. *See* TEX R.APP. P. 47.1.

5. A sex offender whose supervision is being extended under new section 22A of article 42.12, which was not in effect at the time of Davis's offense, is entitled to a hearing at which the defendant is provided the same rights as provided under section 21. TEX.CODE CRIM. PROC. ANN art. 42.12, § 22A(b) (Vernon Supp.2004).

6. This line of authority interprets section 21 as requiring a revocation hearing only after a capias has issued and the defendant is in custody. *See, e.g., Calderon v. State,* 75 S.W.3d 555, 559 (Tex.App.-San Antonio 2002, pet. ref'd) (op. on reh'g) (per curiam). Further, "a hearing is required under Section 22(a) only to the extent such a hearing is required under Section 21." *Id.* at 557. Justice Lopez's dissent in *Calderon* eloquently articulates the due-process concerns raised by this interpretation. *Calderon,* 75 S.W.3d at 561 (Lopez, J., dissenting) ("Under this interpretation, a probationer who is confined has more rights than a probationer who is not confined!"). We note that the current version of section 21(e) of article 42.12 contemplates issuance of a capias and confinement of the defendant when the State files a motion to continue community supervision as well as when the State moves to modify or revoke. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 21(e) (Vernon Supp.2004) ("[a] court retains jurisdiction ... if before the expiration the attorney representing the state files a motion to revoke, continue, or modify community supervision and a capias is issued for the arrest of the defendant.").

in article 28.01, also attaches. *Riggall v. State,* 590 S.W.2d 460, 462 (Tex.Crim.App. 1979) (en banc) (op. on reh'g).[7]

 Although not required to conduct a hearing, the trial court here convened a "supervision review" proceeding after recessing several days to permit Davis to consult with counsel. Accordingly, we need not address whether section 22(c) requires a hearing at which the right to counsel attaches. The trial court accorded Davis the right to counsel, even if it was not required to do so. *See* TEX.CODE CRIM. PROC. ANN. art. 1.051(c) (Vernon Supp.2004) ("An indigent defendant is entitled to have an attorney appointed to represent him in ... any other criminal proceeding if the court concludes that the interests of justice require representation.").[8] The only question presented by these circumstances, therefore, is whether Davis's agreement to proceed without counsel was a knowing and intelligent waiver of that right. As the *Riggall* court stated:

> [A]n accused may waive his right to counsel if such waiver is made voluntarily with knowledge of the consequences thereof. To assure protection of so fundamental a right, courts indulge every reasonable presumption against waiver of counsel. To this extent, this court has held that the record must clearly show that the accused voluntarily, knowingly and intelligently waived his right to counsel in order to assert his right to represent himself.... We remain convinced that appellant's rights were violated in both respects....

*Riggall,* 590 S.W.2d at 462 (quoting *Jordan v. State,* 571 S.W.2d 883, 884 (Tex. Crim.App. [Panel Op.] 1978) (citations

omitted)). In particular, this Court indulges every reasonable presumption against waiver of the right to counsel. *Lugaro v. State,* 904 S.W.2d 842, 843 (Tex. App.-Corpus Christi 1995, no pet.). On direct appeal, the State bears the burden of establishing that the record affirmatively shows a valid waiver of counsel. *Id.; see Upton v. State,* 853 S.W.2d 548, 553 (Tex.Crim.App.1993) ("The State has the burden to establish a valid waiver of Fifth and Sixth Amendment rights to counsel."). The trial court has an obligation to determine whether a defendant understands the importance of legal counsel and knowingly, voluntarily, and intelligently relinquishes the right to the assistance of counsel. *Lugaro,* 904 S.W.2d at 843–44. For a waiver of the right to counsel to be made knowingly and intelligently, the defendant must be given a full understanding of the right to counsel and be admonished on the dangers and disadvantages of self-representation. *Henderson v. State,* 13 S.W.3d 107, 109 (Tex.App.-Texarkana 2000, no pet.) (citing *Collier,* 959 S.W.2d at 626). This admonishment must be on the record. *Henderson,* 13 S.W.3d at 109. Anything less is not a waiver. *Id.*

 Likewise, it is the responsibility of the trial court to determine whether a defendant who appears without counsel is indigent and must have counsel appointed. *Lugaro,* 904 S.W.2d at 844 (citing *Oliver v. State,* 872 S.W.2d 713, 714–16 (Tex.Crim. App.1994)). The record contains two affidavits of Davis's indigency, one dated August 6, 1999 and the other dated October 2, 2002. We note that the trial court appointed counsel for Davis before the original plea proceeding on August 31, 1999 as

---

**7.** We note that a "defendant has a right to counsel at a hearing under" section 21 of article 42.12. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 21(d) (Vernon Supp.2004).

**8.** Article 1.015 was amended in 2002, but the cited provision remained unchanged from the version of the statute in effect on the date of Davis's offense.

well as for the revocation proceeding on October 17, 2002. At the end of the "supervision review" hearing on May 24, 2001, Davis asked the trial court to reduce the monthly payments he was making toward the balance of his court costs, contending he could not afford the payments as ordered. The trial court inquired into Davis's sources of income and monthly expenses before granting Davis's request. Nonetheless, the trial court did not ask Davis if he could afford legal counsel.

Having determined that the interests of justice required legal representation for Davis and after giving him the opportunity to secure counsel, the trial court did not inquire if Davis's later relinquishment of his right to the assistance of counsel was made knowingly, voluntarily, and intelligently. Nor did the trial court ask if the attorney Davis consulted would not be present for financial reasons. We hold that the record does not reflect that Davis knowingly and intelligently waived the right to counsel accorded him by the trial court at the "supervision review" proceeding on May 24, 2001.

 We conclude that a proceeding in which a person had the right to counsel but did not knowingly and intelligently waive that right is void:

> A court which has both subject matter and personal jurisdiction over a given case or controversy, but which performs an action outside of any legal or judicial authority, acts beyond the scope of the law and that ultra vires act cannot be recognized as a valid judicial act. The law will not validate its existence or performance. It is, in hoary terms, a "void" act.

*Ex Parte McCain v. State*, 67 S.W.3d 204, 210 n. 16 (Tex.Crim.App.2002). May 24, 2001 was within the term of Davis's two-year community supervision. Thus, the trial court had subject-matter and personal jurisdiction to extend Davis's period of supervision at that time. *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 22(c) (Vernon Supp.2004). However, we conclude that after according Davis the right to counsel, the trial court acted beyond the scope of the law by extending Davis's community supervision without admonishing Davis on the dangers and disadvantages of self-representation or inquiring into his indigency status.

Accordingly, we hold that the trial court's extension of Davis's community supervision on May 24, 2001 is void. *See McCain*, 67 S.W.3d at 210 n. 16; *see also In re Dooley*, 129 S.W.3d 277, 279 (Tex. App.-Corpus Christi 2004, orig. proceeding) (holding contempt and commitment order in family law case void "absent a knowing and intelligent waiver by relator of her right to counsel"). Davis's supervision terminated on August 31, 2001 without a pending motion to revoke or a valid extension of his term of supervision. Article 42.12 did not authorize the trial court to take any action after August 31, 2001 except to discharge Davis. *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 5(c) (Vernon Supp.2004). We hold that the trial court's extension of Davis's term of supervision on February 13, 2002 and its adjudication of Davis's guilt and revocation of his community supervision on October 28, 2002 were "nullit[ies]." *See Ex parte Fulce*, 993 S.W.2d at 662; *see also Ex parte Donaldson*, 86 S.W.3d at 233.

### 2. Waiver Analysis

██ In addition to the supplemental court reporter's record of the "supervision review" conducted by the trial court on May 24, 2001, we note that the record contains two references to the one-year extension. The first reference appears in Davis's written plea papers in Defendant's Statement Understanding Admonish-

ments: I am the same person who was charged in this cause with the offense of indecency with a child alleged to have occurred in Nueces County, Texas on 5/25 1996 and who was placed on community supervision on 8/31 1999 for a period of 2 years. I understand that prior to September 1, 1993, the term "community supervision" was known as "probation." Original term modified 5/24/01. Second modification 2/13/02. Term of supervision is 5 years.

The second reference to the initial one-year extension is included in the trial court's oral admonishments to Davis preceding the adjudication proceeding:

> THE COURT: Are you the same Thomas J. Davis who was charged by indictment in Cause Number 96–CR–2110–D, with the offense of indecency with a child, alleged to have occurred on May 25, 1996, a second degree felony, who entered a plea of guilty on August 31, 1999 and whose adjudication was deferred and was placed on community supervision for a period of two years, and whose conditions of community supervision were modified on May 24th, 2001 by extending the community supervision period to August 31, 2002; and whose conditions were again modified on February 13th, 2002 by extending the community supervision to August 31, 2004, and who is now before the Court on a motion to revoke filed on September 19th, 2002? Are you that person?
>
> DAVIS: Yes, Your Honor.

Davis did not object before or during the adjudication and revocation proceeding that the term of his supervision had expired, nor did he otherwise challenge either of the trial court's two extensions of his term of community supervision. *See*

Tex.R.App. P. 33.1. We note that the Texas Court of Criminal Appeals has held that "[t]he defense of lack of due diligence in apprehending a probationer must be raised by the appellant before or during the revocation hearing." *Browder v. State,* 109 S.W.3d 484, 490 (Tex.Crim.App.2003); *see Hardman v. State,* 614 S.W.2d 123, 127 (Tex.Crim.App. [Panel Op.] 1981) (holding that appellant cannot raise issue of due diligence for first time on appeal). However, those cases are limited to the circumstance in which the State files a motion to revoke and issues a capias within the period of supervision but does not apprehend the defendant until after the supervision has terminated. *Delgado v. State,* 634 S.W.2d 354, 355 (Tex.App.-Waco 1982, no pet.) (citing *Guillot v. State,* 543 S.W.2d 650, 653 (Tex.Crim.App.1976)). As a result, the State's diligence in apprehending the defendant is in the nature of a defense that must be raised in the trial court. *See Delgado,* 634 S.W.2d at 355 (citing *Hardman,* 614 S.W.2d at 127).

Here, the State did not file any motion to revoke, continue, or modify Davis's community supervision before August 31, 2001. Accordingly, we hold that Davis did not waive his challenge to the trial court's authority to adjudicate his guilt and revoke his community supervision when he did not object to the May 24, 2001 extension. *See Ex parte Fulce,* 993 S.W.2d at 662 (holding that any action taken after supervisory period expired without pending motion to revoke was "without jurisdiction"); *Ex parte Donaldson,* 86 S.W.3d at 233 (holding that trial court's order revoking applicant's probation entered outside probationary period was "without jurisdiction"); *see also Monreal,* 99 S.W.3d at 620 ("[B]oth bargaining and non-bargaining defendants can appeal jurisdictional issues."); *Stine v. State,* 908 S.W.2d 429, 431 (Tex.Crim.App. 1995) ("A lack of jurisdiction is fundamen-

tal error, and is appealable at any time, even if it is raised for the first time on appeal.").

## V. CONCLUSION

"[S]ince 1913, the Constitution of our country has been interpreted to protect persons who are released, from reincarceration without due process of law." *Ex parte Hale,* 117 S.W.3d 866, 871 (Tex. Crim.App.2003) (orig.proceeding). Probationers in Texas do not face the spectre of a jailer, acting on caprice, who harasses the probationer with release and reincarceration, "will-he, nil-he." *Id.* The trial and appellate courts of Texas have no "inherent powers" that permit them to ignore an express statutory or constitutional mandate. *Queen v. State,* 842 S.W.2d 708, 711 (Tex.App.-Houston [1st Dist.] 1992, no pet.). This fundamental tenet of our State's jurisprudence does not evaporate when a trial court voices a concern that a person before the court represents a risk to the public safety. *Id.* Even if that concern is well-founded—about which we express no opinion in this case—it still has no evaporative effect. *See id.*

We sustain Davis's pro se issue. His two-year period of community supervision has expired. Accordingly, we VACATE the judgment in cause number 96–CR–2110–D in the 105th Judicial District Court of Nueces County, Texas, dated October 28, 2002, which adjudicated Davis's guilt and revoked his community supervision. *See Ex parte Fulce,* 993 S.W.2d at 662. We remand this cause to the trial court for entry of an order dismissing the charges against Davis and discharging him. *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 5(c) (Vernon Supp.2004). We order the Clerk

of this Court to transmit copies of this opinion to the institutional and parole divisions of the Texas Department of Criminal Justice.[9] *See Ex parte Fulce,* 993 S.W.2d at 662.

## VI. ANDERS COUNSEL'S MOTION TO WITHDRAW

An appellate court may grant counsel's motion to withdraw filed in connection with an *Anders* brief. *Moore v. State,* 466 S.W.2d 289, 291 n. 1 (Tex.Crim. App.1971); *see Stafford,* 813 S.W.2d at 511 (noting that *Anders* brief should be filed with request for withdrawal from case). Counsel has requested to withdraw from further representation of Davis on this appeal. We grant counsel's motion to withdraw and order her to advise Davis promptly of the disposition of this case. *See Ex parte Wilson,* 956 S.W.2d 25, 27 (Tex.Crim.App.1997) (per curiam).

---

9. Article 62.03 of the code of criminal procedure requires prerelease notification to Davis of his continuing obligation to comply with sex offender registration requirements. *See*

Tex Code Crim. Proc. Ann. art. 62.03 (Vernon Supp. Pamph.2004); *see also* Tex Code Crim. Proc. Ann. art. 62.12(a) (Vernon Supp. Pamph. 2004).